1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ROBERT BERG, Derivatively and on Behalf of
INTUITIVE SURGICAL, INC.,

              Plaintiff,

   v.

GARY GUTHART, et al.,

              Defendants,

-and-

INTUITIVE SURGICAL, INC.
              Nominal Party

_____

CITY OF BIRMINGHAM RELIEF AND
RETIREMENT SYSTEM, Individually and
Derivatively on Behalf of Nominal Defendant
INTUITIVE SURGICAL,  INC.,

              Plaintiff,

   v.

GARY GUTHART, et al.,

              Defendants,

-and-

INTUITIVE SURGICAL, INC.
              Nominal Defendant.

Case Nos.: 5:14-CV-00515-EJD; 5:14-
CV-01307-EJD

**ORDER (1) GRANTING MOTIONS
FOR CONSOLIDATION OF ALL
RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S
MOTION FOR APPOINTMENT OF
LEAD COUNSEL; (3) DENYING
PLAINTIFF CITY OF BIRMINGHAM
RELIEF AND RETIREMENT
SYSTEM'S MOTION FOR
APPOINTMENT OF LEAD COUNSEL**

1

In these related shareholder derivative actions, Plaintiffs City of Birmingham Relief & Retirement System ("Birmingham") and Robert Berg ("Berg") each seek (1) consolidation of all related actions, (2) appointment as lead plaintiff, and (3) approval of selection of lead counsel.  The court found these matters suitable for decision without oral argument and previously vacated the hearing pursuant to Civil Local Rule 7-1(b).  Having reviewed the parties' submissions and for the reasons described below, the court GRANTS the movants' uncontested motions for consolidation of all related actions, GRANTS Berg's Motion to Appoint Lead Counsel, and DENIES Birmingham's Motion for Appointment of Lead Plaintiff and Lead Counsel.

## I.  BACKGROUND

On February 3, 2014, Berg, by his counsel, the Weiser Firm, filed a verified derivative complaint in the Northern District of California claiming breach of fiduciary duty for various alleged actions of and statements by Defendants Gary S. Guthart, Marshall L. Mohr, Lonnie M. Smith, David J. Rosa, Mark J. Meltzer, Jerome J. McNamara, Augusto V. Castello, Salvatore J. Brogna, Colin Morales, Craig H. Barratt, Eric H. Halvorson, Amal M. Johnson, Alan J. Levy, Floyd D. Loop, Mark J. Rubash, and George Stalk Jr. (collectively "Defendants") and Intuitive Surgical, Inc. ("Intuitive") as a nominal defendant.  See No. 14-CV-00515 Docket Item No. 1.  On March 24, 2014, Birmingham, by its counsel Scott+Scott, filed a similar derivative suit against substantially the same defendants in the Northern District of California.[1]  See No. 14-CV-01307 Docket Item No. 1.  Both cases seek to hold Intuitive's Board of Directors and certain executive officers liable for participating in a scheme to misrepresent to investors and to the Food and Drug Administration ("FDA") the number and seriousness of medical complications caused by the medical device that is Intuitive's sole source of revenue.  Plaintiffs agree that their derivative actions arise from the same or substantially the same set of facts and should be consolidated.  However, Plaintiffs disagree on the appropriate leadership structure for these actions.  Upon

---

[1] A third party, Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago") filed a similar suit in San Mateo Superior Court on February 21, 2014.  See Case No. CIV-526930.  That case was removed to this district and related to these actions on March 26, 2014.  See No. 14-CV-01384 Docket Item No.1. On June 25, 2014, the court granted Chicago's motion to remand the case back to state court.  See No. 14-CV-01384 Docket Item No. 43.

2

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD COUNSEL

1  consolidation, each plaintiff moves to be appointed, with their respective attorneys, as lead plaintiff

2  and lead counsel for the consolidated action.  See No. 14-CV-00515 Docket Item No. 31; No. 14-

3  CV-01307 Docket Item No. 14.

## II. DISCUSSION

### a.  Consolidation

6  Each plaintiff has filed a motion for consolidation of the related actions and such motions

7  are uncontested.  See No. 14-CV-00515 Dkt. No. 31; No. 14-CV-01307 Dkt. No. 14.  The district

8  court enjoys broad discretion to consolidate cases "[w]hen actions involving a common question of

9  law or fact are pending before the court" to prevent unnecessary costs or delay.  Fed. R. Civ. P.

10  42(a); Investors Research Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal., 877 F.2d 777, 777 (9th Cir.

11  1989).  The court agrees that these actions present virtually identical factual and legal issues and

12  therefore should be consolidated.  Accordingly, the court GRANTS the motions to consolidate.

### b.  Appointment of Lead Plaintiff

14  For the purpose of creating an efficient case management structure in complex litigation, a

15  district court has the inherent authority to determine the conduct of derivative proceedings,

16  including appointing lead counsel and/or lead plaintiff.  See Fed. R. Civ. P. 23.1 advisory

17  committee's note; Vincent v. Hughes Air West, Inc., 557 F.2d 759, 774-75 (9th Cir. 1977); see also

18  Nicolow v. Hewlett Packard Co., No. 12-CV-05980-CRB, 2013 WL 792642 (N.D. Cal. Mar. 4,

19  2013); Hacker v. Peterschmidt, No. 06-CV-04524–SI, 2006 WL 2925683 (N.D. Cal. Oct.12,

20  2006); but see, Gallardo v. Bennett, No. 06-CV-03864-JF, 2006 WL 2884497 (N.D. Cal. Oct. 10,

21  2006) (refusing to appoint lead plaintiff where the parties had failed to cite any cases establishing a

22  district court's ability to do so).  Courts in this district have typically chosen to appoint a lead

23  plaintiff simultaneously with lead counsel, beginning with an inspection of the adequacy of the

24  putative plaintiffs, and then ensuring that the appointed plaintiff's counsel is capable.  See

25  Nicolow, 2013 WL 792642 (first appointing lead plaintiffs, then confirming that lead plaintiffs'

26

27

28

**United States District Court**
For the Northern District of California

3

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

Case 5:14-cv-00515-EJD   Document 45   Filed 07/30/14   Page 4 of 15

counsel were also adequate); <u>Hacker</u>, 2006 WL 2925683 (same).  This court will follow the same procedure.

### 1.   Adequate Representation under Rule 23.1

While the Private Securities Litigation Reform Act of 1995 ("PSLRA"), PL 104–67, December 22, 1995, 109 Stat 737, provides statutory guidance for appointing a lead plaintiff in a securities fraud action, there is no similar statute addressing the appointment of a lead plaintiff in a shareholder derivative action.  Federal Rule of Civil Procedure 23.1 requires only that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation."  According to the Ninth Circuit, for purposes of Rule 23.1, "[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class."  <u>Hacker</u>, 2006 WL 2925683, at *2 (citing <u>Larson v. Dumke</u>, 900 F.2d 1363, 1367 (9th Cir. 1989)).

Because no binding precedent exists beyond the foregoing, some district courts have constructed a set of factors to determine the adequacy of a plaintiff at the appointment stage.  These factors include:  (1) whether the plaintiff held shares during the relevant time period; (2) whether the plaintiff is represented by capable counsel; and (3) whether the plaintiff is subject to any unique defense that would frustrate appointment.  <u>See</u> <u>Berkowitz ex rel. Affymetrix, Inc. v. Fodor</u>, No. 06-CV-05353-JW, 2006 WL 3365587 (N.D. Cal. Nov. 20, 2006) (citing <u>Millman ex rel. Friedman's, Inc. v. Brinkley</u>, No. 03-CV-03831-WSD, 2004 WL 2284505, at *3 (N.D. Ga. Oct. 1, 2004)); <u>see also</u> <u>Brown v. Kelly</u>, No. 06-CV-04671-JW, 2006 WL 3411868, at *1 (N.D. Cal. Nov. 27, 2006) (also applying the <u>Millman</u> factors).  In addition, the Ninth Circuit has outlined a number of factors which are important in determining adequacy under Rule 23.1 when a plaintiff faces a motion to dismiss, motion for summary judgment, or other substantive motion.  These factors are:

(1) indications that the plaintiff is not the true party in interest;

(2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit;

4

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD COUNSEL

1    (3) the degree of control exercised by the attorneys over the litigation;

2    (4) the degree of support received by the plaintiff from other shareholders;

3    (5) the lack of any personal commitment to the action on the part of the representative

4    plaintiff;

5    (6) the remedy sought by plaintiff in the derivative action;

6    (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the

7    derivative action itself; and

8    (8) plaintiff's vindictiveness toward the defendants.

9    Larson, 900 F.2d at 1367 (internal citations omitted).  "These factors are intertwined or

10   interrelated, and it is frequently a combination of factors which leads a court to conclude that the

11   plaintiff does not fulfill the requirements of 23.1."  Id.  (internal quotation omitted).  Although these

12   factors do not track exactly with the issues present at this stage, they may still be used to inform the

13   court.

14          The court will first assess both plaintiffs' adequacy using the Millman factors.  As to the

15   first factor, the relevant time period in this case is 2012 through the present.  See 14-CV-00515

16   Dkt. No. 31 at 6.  Birmingham and Berg both held shares during that time.  Birmingham has held

17   shares continuously since June 2007 and Berg has held shares continuously since January 2009.

18   See 14-CV-01307 Dkt. No. 1 ¶ 20; No. 14-CV-00515 Dkt. No. 1 ¶ 29.  As to the second factor,

19   Birmingham and Berg are both represented by counsel with substantial experience litigating

20   shareholder derivative actions.  See No. 14-CV-00515 Dkt. No. 31 at 14-17; No. 14-CV-01307

21   Dkt. No. 14 at 18.  As to the third factor, Berg argues that Birmingham is subject to unique

22   defenses because Birmingham inadequately pled subject matter jurisdiction and because

23   Birmingham is an institutional investor.  See No. 14-CV-00515 Docket Item No. 35 at 10-12.

24          There is a dearth of analysis of the Millman unique defenses prong in cases appointing lead

25   plaintiff in shareholder derivative actions.  As such, the court looks to discussion of unique

26   defenses in cases appointing a class representative for instruction.  Courts in those matters have

27

28

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

United States District Court
For the Northern District of California

held that "the defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to 'devote considerable time to rebut the unique defense.'" Hallet v. Li & Fung Ltd., No. 95-CV-08917-JSM, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) (quoting Landry v. Price Waterhouse, 123 F.R.D. 474, 476 (S.D.N.Y.1989)). Therefore, the court "should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate." Id. In its original verified complaint, Birmingham alleged that this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because Birmingham and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. See 14-CV-01307 Docket Item No. 1 ¶ 20. Birmingham alleged that it is a "domestic entity" located in Jefferson City, Alabama. Id. Berg argues that this allegation is insufficient to establish Birmingham's citizenship for diversity jurisdiction. See No. 14-CV-00515 Dkt. No. 35 at 10-12.

The court is hesitant to delve into the merits of any jurisdictional claim at this stage of the litigation; however, it need not resolve this issue because Berg has failed to articulate a cohesive jurisdictional argument. Berg cites to a single, out-of-district authority to support his argument that pleading as a "domestic entity" is insufficient for diversity jurisdiction: City of Sterling Heights Gen. Emps. Ret. Sys. on Behalf of Caterpillar Inc. v. Oberhelman, No. 13-CV-01141-SLD, 2014 WL 949425 (C.D. Ill. Mar. 11, 2014). The holding in Caterpillar is inapposite to the instant case for two reasons. First, that order did not grant or deny lead plaintiff status, but instead granted a motion for leave to file a reply while also directing the plaintiff to provide more information in support of its diversity jurisdiction allegations. Second, in that case, the plaintiff claimed to have been a "trust," an allegation which Birmingham has never made, and one that the court specifically focused on when it recommended that the plaintiff amend its complaint so to adequately allege diversity jurisdiction . See id. at *2 (holding that "[i]n the absence of information about Plaintiff's trustees, Plaintiff has not established that this Court has jurisdiction over its claims"). The court is

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD COUNSEL

1    not compelled by Berg's unsupported jurisdictional argument and accordingly finds that, at this

2    stage, potential jurisdictional issues do not render Birmingham ineligible for lead plaintiff status.

3         Berg also claims that Birmingham is potentially subject to a unique defense because it, as

4    an institutional investor, has a fiduciary duty to its beneficiaries that may conflict with the fiduciary

5    duty it would owe to the shareholders as lead plaintiff.  Notably, Berg fails to argue that this is an

6    economic interest that would render a lead plaintiff unsuitable pursuant to the Ninth Circuit's

7    reading of Rule 23.1.  See Larson, 900 F.2d at 1367.  Moreover, Berg fails to cite to any authority

8    to support his argument that an institutional investor is not adequate under Rule 23.1 to fairly

9    represent the interests of the shareholders. This lack of support, especially in light of the fact that

10   many other courts have appointed adequate institutional investors in derivative actions, is fatal to

11   Berg's unique defense argument.  See Dollens, 2001 WL 1543524, at *5; Iron Workers Local No.

12   25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC, 616 F. Supp. 2d 461, 464

13   (S.D.N.Y. 2009).  Accordingly, the court finds that neither proposed plaintiff is subject to any

14   unique defenses.

15        Having found that both plaintiffs satisfy the Millman factors, the court now considers the

16   Ninth Circuit's Larson factors to aid in its determination of the instant motions.  Other courts in

17   this circuit have consulted the Larson factors to determine the adequacy of a putative lead plaintiff,

18   although Larson "was not a case about competing lead plaintiffs but about whether a putative

19   derivative plaintiff satisfied the criteria set out in Federal Rule of Civil Procedure 23.1 for who

20   may maintain a derivative action." Nicolow, 2013 WL 792642, at *7.  Neither party explicitly

21   argues in its moving papers that the other is disqualified pursuant to Larson, but Berg does make an

22   argument which, if meritorious, may raise concerns under one or more of its factors.  Berg argues

23   that Birmingham and its counsel, Scott+Scott, are inadequate because Scott+Scott provides

24   monitoring services for its clients, suggesting that Birmingham lacks a personal stake in the

25   outcome or that the litigation is attorney-driven.  See 14-CV-01307 Docket Item No. 17 at 20.  The

26   court finds this argument to be groundless.  Again, Berg cites a single, out-of-district authority to

27

28

7

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

support his contention, and again that authority is inapposite to the instant case.  In that case, <u>In re Kosmos Energy Ltd. Sec. Litig.</u>, No. 12-CV-00373, 2014 WL 1293834-JJB (N.D. Tex. Mar. 19, 2014), the district court found the monitoring services offered by counsel troubling when combined with a multitude of other facts showing that the plaintiff had little interest in the litigation, including a failure to attend multiple proceedings and a complete lack of knowledge of the allegations in the complaint.  Berg has not argued that Birmingham has acted in any affirmative way that demonstrates a lack of personal stake other than the mere existence of this monitoring service.  Moreover, courts in this district have rejected the notion that the existence of a portfolio monitoring agreement with counsel renders a plaintiff unsuitable to represent the interests of a class.  <u>See In re UTStarcom, Inc. Sec. Litig.</u>, No. 04-CV-04908-JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010); <u>Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.</u>, No. 01-CV-20418-JW, 2004 WL 5326262 (N.D. Cal. May 27, 2004).  Therefore, Scott+Scott's monitoring service does not render Birmingham inadequate under Rule 23.1.  Thus, the court finds that at this stage both putative lead plaintiffs are adequate.

### 2. <u>Dollens</u> Factors

In cases where all proposed plaintiffs are adequate under Rule 23.1 courts have selected the lead plaintiff among them using marginal factors, such as those set out in the PSLRA for selecting lead plaintiff in securities litigation or those set out in the <u>Manual for Complex Litigation</u> for appointing lead counsel in class actions.  <u>See Nicolow</u>, 2013 WL 792642, at *7-8; <u>In re Foundry Networks, Inc. Deriv. Litig.</u>, No. 06-5598, 2007 WL 485974, at *1 (N.D. Cal. Feb. 12, 2007); <u>Dollens</u>, 2001 WL 1543524, at *5.  In its motion, Birmingham relies on the set of factors laid out by the court in <u>Dollens</u> to argue that it will best serve the interests of the shareholders.  These factors are:  (1) the plaintiff's financial interest, (2) preference for institutional plaintiffs, (3) the quality of the pleadings, (4) the vigorousness with which the plaintiff has pursued the suit, and (5) the attorney's fee structure.  <u>Dollens</u>, 2001 WL 1543524, at *5-6.  Of these factors, financial interest, quality of the pleadings, and vigorousness of prosecution appear to carry the most weight

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

United States District Court
For the Northern District of California

1   in determining the plaintiff who will best serve the interests of the shareholders in a derivative

2   suit.[2]  The court will address each factor in turn.

3                           **i.**        **Financial Interest**

4         Courts have interpreted the financial interest factor in one of two ways.  Some have adopted

5   the approach of the PSLRA, which dictates a strict preference towards appointing as lead plaintiff

6   the plaintiff with the largest amount of absolute shares.  See, e.g., Foundry, 2007 WL 485947, at *1

7   (noting that "while there is no presumption in favor of selecting the plaintiff with the largest

8   financial stake as there is in cases under the [PSLRA], financial stake has some relevance to the

9   plaintiff's interest in a derivative action and the likelihood that the plaintiff will pursue the

10  derivative claims vigorously").  Meanwhile, other courts have followed Delaware state law, which

11  governs the majority of shareholder derivative actions, by focusing on the relative economic impact

12  on each plaintiff.  See Kubiak v. Barbas, No. 11-CV-00141-TSB, 2011 WL 2443715 at *2 (S.D.

13  Ohio June 14, 2011); see also Hirt v. U.S. Timberlands Serv. Co. LLC, No. CIV.A 195750, 2002

14  WL 1558342, at *2 (Del. Ch. July 3, 2002) ("the relative economic stakes of the competing

15  litigants in the outcome of the lawsuit ought to be accorded "great weight"); accord Wiehl, 2005

16  WL 696764, at *1 (selecting an individual plaintiff with the smallest absolute number of shares to

17  act as lead plaintiff rather than institutional investors).  In its opposition to Berg's motion,

18  Birmingham argues that the relative size of the holdings is the correct analysis to use but further

19  contends that this factor is "far less significant" than quality of the pleadings and vigorousness of

20  prosecution.  See 14-CV-01307 Dkt. No. 17 at 11.  In his reply to Birmingham's opposition, Berg

21  agrees that the relative economic stake should be considered, and argues that because his Intuitive

22

23

---

24  [2] These factors track closely with those used to determine lead counsel in cases where the court chooses to only appoint

25  lead counsel.  See Comverse, 2006 WL 3761986 at *2.  They have also been cited by Delaware state courts as "factors that should … guide the Court, in determining which lawsuit should assume a lead … role."  TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc., No. 18336, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000); see also Wiehl v. Eon Labs,

26  No. CIV.A. 1116-N, 2005 WL 696764, at *1 (Del. Ch. Mar. 22, 2005).  Although not binding, the courts' application of these factors may still inform the court in appointing a lead plaintiff, especially because, barring extraordinary

27  circumstances, lead plaintiff will select lead counsel.

28  Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

stock represents 10% of his portfolio, as opposed to .01% for Birmingham, the relative analysis favors appointing him as lead plaintiff. [3]  See 14-CV-00515 Docket Item No. 41 at 3.

The court agrees that the relative economic stake weighs in favor of the appointment of Berg.  The purpose of this factor is to determine which party has the most financial incentive to vigorously pursue a meritorious outcome.  Because his Intuitive stock represents such a large percentage of his portfolio, Berg will certainly be motivated to pursue this case vigorously. Birmingham may also be well motivated to pursue this case given the absolute amount of shares it has at stake, but Berg's greater relative stake tips the balance in favor of appointing him as lead plaintiff.

### ii.      Institutional Plaintiffs

Birmingham requests this court adopt a preference for institutional plaintiffs because such investors generally have a greater capacity to manage complex litigation and because institutional shareholders "have the most to gain from meritorious securities litigation."  See 14-CV-01307 Dkt. No. 14 at 15.  This preference is a carryover from the PSLRA, in which Congress adopted a preference for institutional plaintiffs in securities actions because "investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  House Conference Report No. 104-369, 104th Cong. 1st Sess. at 34 (1995).  However, that shareholder derivative suits arise under largely the same facts as securities litigation suits does not require the court to conflate these two distinct areas of law.  As another court in this district recently noted, one major difference between the two forms of litigation is that the client in a shareholder derivative suit is not a class, but the company itself.  Nicolow, 2013 WL 792642 at *6.  Because the client is the company, "all shareholders have, by definition, a shared and indirect interest in injury suffered by the corporation as well as in litigation brought on its behalf," regardless of status as an individual or as an

---

[3] Birmingham likely argued for a relative analysis because at that time it was not the competing plaintiff with the largest absolute amount of shares.  That designation went to Chicago, which held 4,379 shares.  Birmingham is the next largest absolute shareholder with 551 shares.  Berg has not disclosed the exact number of shares he owns, but does not dispute that it is less than those amounts.

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD COUNSEL

United States District Court
For the Northern District of California

1    institutional investor.  Shareholder Deriv. Actions L. & Prac. § 1:1 (2013).  Moreover, even the

2    courts that have acknowledged a preference for institutional investors in the context of shareholder

3    derivative actions have not adopted a bright line preference.  The investor plaintiff must still

4    proffer facts suggesting that it has a greater incentive than an individual plaintiff to litigate the

5    case.  See Dollens, 2001 WL 1543524, at *6.

6         Here, Berg has expressed his commitment to his fiduciary duties towards the company, and

7    has a viable economic stake in seeing meritorious litigation because such a relatively large chunk

8    of his portfolio is at stake.  Birmingham has not proffered any facts showing that it, as an

9    institution, has greater incentive to be lead plaintiff other than naked assertions that it can better

10   handle complex litigation.  Therefore, even if the court did choose to adopt this factor, it still would

11   weigh as a neutral factor between these two parties.

12                        **iii.    Quality of the Pleadings**

13        This factor is not a premature meritorious analysis of the pleadings, but rather a "barometer

14   through which the court can assess which [plaintiff] would best represent the interests of the

15   shareholders and the rights of the corporation."  Comverse, 2006 WL 3511375, at *5.  This is

16   because the pleadings at this stage can still be amended to cure any potential shortcomings.  Id.

17   Nonetheless, courts have weighed this factor in favor of plaintiffs who had filed complaints that

18   were "more targeted, better researched, and more challenging for the defendants."  Wiehl, 2005

19   WL 696764, at *3.  Birmingham argues that its books and records investigation done pursuant to 8

20   Delaware Code § 220 ("Section 220")[4] rendered its pleading of significantly greater quality than

21   Berg's.  See 14-CV-01307 Dkt. No. 14 at 14.  While it is undisputed that Birmingham is the only

22   party to have sent a demand letter seeking documents specifically under Section 220, Berg claims

23

24   ────────────────
     [4] This statute allows any stockholder to, upon written demand, inspect a subsidiary's books and records for any "proper
     purpose."  8 Del. C. § 220(b)(2) (West 2010).  If the corporation refuses to permit an inspection the stockholder may
25   apply to the Delaware Court of Chancery for an order to compel such inspection.  Id. § 220(c).  The Chancery Court
     then determines whether or not the person seeking inspection is entitled to the inspection sought.  Id.  Here,
26   Birmingham sent a demand letter in to Intuitive in October 2013 seeking documents pursuant to Section 220.  See 14-
     CV-01307 Dkt. Item No. 15 Ex. C.  Intuitive voluntarily produced documents in response to that letter and
27   Birmingham did not pursue the matter any further.

28                                              11
     Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
     ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
     PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
     CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
     COUNSEL

to have procured the exact same information from Intuitive, albeit via an alternative method.  See 14-CV-00515 Dkt. No. 31 at 20.  Although both complaints are strong, a precursory glance at the pleadings reveals that Birmingham's Amended Complaint is more targeted because it includes particularized allegations stemming from information procured from the voluntarily produced documents.

Though the court finds Birmingham's operative complaint to be of better quality than the one currently operating in Berg's case, the court has not had the opportunity to make a straight comparison between the two parties' pleadings.  Birmingham failed to follow this district's local rules when it filed its original complaint: the document was heavily redacted, but Birmingham did not file an appropriate motion to seal.  See 14-CV-01307 Docket Item Nos. 1, 7.  The court denied the parties' stipulation to seal without prejudice to refiling an acceptable motion.  Id. Dkt. No. 7.  Birmingham never responded to the court's order; it neither filed an unredacted version of the complaint nor filed an appropriate motion to seal.  Instead, Birmingham filed its Amended Complaint, unredacted, the day before filing the instant motion.  No. 14-CV-01307 Docket Item No. 13.  By now pointing to the quality only of this Amended Complaint to support its current motion, Birmingham is essentially asking the court to ignore the original complaint or to presume that it too was better pled than Berg's.  The court can do neither.  Given the questionable tactical choices made by Birmingham, the court does not find it appropriate to consider only the quality of the Amended Complaint vis a vis Berg's original complaint.  Of course, the state of Birmingham's original complaint impairs the court's ability to make a comprehensive assessment of its quality.  Considering this reality, as well as the quality of Berg's original complaint and his claim that he now holds all of the same records that Birmingham obtained through its Section 220 investigation, the court reasonably infers that Berg too could produce an amended complaint of similar quality to Birmingham's Amended Complaint.  Accordingly, the court finds this factor to be neutral.

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

1

### iv.     Vigorousness of the Prosecution

2        Courts examine various aspects of a party's litigation behavior when considering this

3   factor.  Courts generally prefer a party that has consistently sought to move the case forward in a

4   productive manner.  For example, in <u>Dollens</u>, the court praised the plaintiff who had filed first

5   because he had taken the initiative in the form of discovery requests to move the case along.  2001

6   WL 1543524, at *6.  Courts have also found in favor of the party that "made the most concerted

7   effort to be inclusive," and looked to streamline the consolidation process.  <u>Kubiak</u>, 2011 WL

8   2443715 at *2; <u>Chester Cnty. Emp's' Ret. Fund v. White</u>, 11-CV-08114, 2012 WL 1245724, at *4

9   (N.D. Ill. Apr. 13, 2012); <u>see also Nicolow</u>, 2013 WL 792642, at *6 (finding in favor of the

10   plaintiff whose counsel had taken steps to be most inclusive).  Birmingham claims that because it is

11   the only party to have completed a Section 220 investigation, it has prosecuted the case most

12   vigorously.  Berg disputes this contention, claiming that he has received all of the same

13   information through other methods.  Because Birmingham did not take any further step to

14   prosecute the Section 220 investigation, it cannot dispute that its voluntarily produced documents

15   from Intuitive took any greater effort to procure than the voluntarily produced documents that Berg

16   procured.  Additionally, of the two, Berg has made the most concerted effort to be inclusive of the

17   other plaintiffs in this case by suggesting on multiple occasions joint prosecution and a co-plaintiff

18   leadership structure.[5]  <u>See</u> 14-CV-00515 Docket Item No. 35 at 9-10.  Because Berg has made a

19   consistent effort to move the case forward in an inclusive manner, the court finds that this factor

20   weighs in favor of appointment of Berg as lead plaintiff.

21

### v.     Attorney Fee Structure

22        This factor is seldom considered and appears to be unique to the case to which Birmingham

23   cited.  In <u>Dollens</u>, the court had specifically requested the attorneys for both putative lead plaintiffs

24

25   _____

[5]Birmingham did make a belated attempt to jointly prosecute the case with Chicago.  <u>See</u> 14-CV-01307 Docket Item
26   No. 28.  However Birmingham acted only after Chicago was subject to Intuitive's motion to remand, and in fact filed
its letter with the court on the same day that the motion for remand was granted.  <u>See</u> 14-CV-01383, Docket Item No.
27   43.  Therefore, the court does not find this action to demonstrate any genuine effort on Birmingham's part to be
inclusive.

28   Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL

*United States District Court*
*For the Northern District of California*

1   to submit letters concerning their anticipated fees, underscoring the need for reasonable attorney's

2   fees and cautioning against any duplicative efforts.  2001 WL 1543524, at *6.  However, that case

3   involved the appointment of co-lead plaintiffs and it appears that this factor was essentially used to

4   ensure that appointing two lead counsels would not be financially detrimental to the shareholders.

5   Because only one counsel will be appointed as lead, this factor does not apply to this matter.

6                                 **3.   Determination**

7            The court finds that both plaintiffs are adequate for appointment under Rule 23.1.  In

8   parsing the additional marginal factors, Berg stands out as the lead plaintiff who would best serve

9   the interests of the company.  Berg has a larger relative financial stake that would motivate him to

10   more vigorously pursue the prosecution and has behaved in an inclusive manner befitting a lead

11   plaintiff.  Birmingham's status as an institutional investor does not inherently lend itself to any

12   inference that it would be a better lead plaintiff in a shareholder derivative action, nor has

13   Birmingham made any argument that persuades the court otherwise.  Finally, because Berg and

14   Birmingham have obtained the same documents, it is reasonable for the court to infer that Berg

15   could without difficulty produce a consolidated complaint that is equally as targeted as

16   Birmingham's Amended Complaint.  Thus, the court will appoint Berg as lead plaintiff.

17                           **c.   Appointment of Lead Counsel**

18            "The court ... may appoint one or more attorneys as ... lead counsel ... for the consolidated

19   cases and accordingly assign the designated lawyers specific responsibilities."  9 Charles Alan

20   Wright & Arthur R. Miller, Fed. Practice and Proc.: Civil 2d § 2385, at 463 (2d ed. 1994 &

21   Supp.2005) (footnote omitted).  While the decision regarding appointment of lead counsel is

22   ultimately within the court's discretion (Horn, 227 F.R.D. at 3) this court subscribes to the notion

23   that "plaintiffs, absent extraordinary circumstances, should be able to select their own counsel."

24   Dollens, 2001 WL 1543524, at *6.  Here, there are no extraordinary circumstances that would bar

25   Berg's counsel, the Weiser Firm, from representing the shareholders in this matter.  Accordingly,

26   the court appoints the Weiser Firm as lead counsel.

27                                           14

28   Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
     ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
     PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
     CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
     COUNSEL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**III.    CONCLUSION**

Based on the foregoing, the court ORDERS as follows:

1.  The motions to consolidate these related cases are GRANTED.

2.  All future filings shall be in 5:14-CV-00515-EJD and shall bear the caption "<u>In re Intuitive Surgical Shareholder Derivative Litigation</u>."  The clerk shall rename this case accordingly.

3.  Berg's Motion to Appoint Lead Counsel is GRANTED

4.  The court appoints Robert Berg as Lead Plaintiff in this action.

5.  The court appoints the law firm of the Weiser Firm as Lead Counsel in this action.

6.  Birmingham's Motion for Appointment as Lead Plaintiff and Lead Counsel is DENIED.

7.  On or before August 13, 2014, Lead Plaintiff in <u>In re Intuitive Surgical Shareholder Derivative Litigation</u> shall file a Consolidated Class Action Complaint.

The court hereby schedules a Case Management Conference in <u>In re Intuitive Surgical, Inc. Shareholder Derivative Litigation</u> for October 10, 2014 at 10:00 a.m.  The parties shall file a Joint Case Management Statement, in compliance with the undersigned's standing orders, on or before September 30, 2014.

**IT IS SO ORDERED.**

Dated: July 30, 2014

_____
EDWARD J. DAVILA
United States District Judge

15

Case Nos.: 5:14-CV-00515-EJD, 5:14-CV-01307-EJD
ORDER (1) GRANTING MOTIONS FOR CONSOLIDATION OF ALL RELATED ACTIONS; (2) GRANTING
PLAINTIFF ROBERT BERG'S MOTION FOR APPOINTMENT OF LEAD COUNSEL; (3) DENYING PLAINTIFF
CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT OF LEAD
COUNSEL